In the Matter of the GUARDIANSHIP OF James R. BRAMBLETT, An Adult.

Mary C. BRAMBLETT, Guardian, Appellant,

v.

Ann SEBENS, James Bramblett and Mark Bramblett, Appellee.

No. 06A04–8901–CV–3.

Court of Appeals of Indiana, Fourth District.

Jan. 25, 1990.

Opinion on Petition for Rehearing March 19, 1990.

Hollis Roy Martin, Martin & Wharry, Lebanon, for appellant.

Lawrence D. Giddings, Giddings Whitsitt & McClure, Lebanon, for appellee.

MILLER, Judge.

The question to be decided in this appeal is what to do with the $100,000 proceeds from the sale of real estate owned by a husband and wife as tenants by the entireties when: (1) the property was sold while the wife was guardian of the husband, (2) the court ordered the proceeds disbursed to the wife in her individual capacity, subject to monthly payments to the guardianship for the care and maintenance of the husband, (3) the husband died intestate approximately one month after the property was sold, and (4) the wife kept the proceeds intact. Ultimately, the trial court ordered that one-half of the proceeds be disbursed to the wife in her individual capacity and one-half of the proceeds be disbursed to the husband's estate. The wife appeals this order raising six issues for review. However, one is dispositive:

> Whether the trial court erred in ordering the guardian to allocate to the deceased ward's estate one-half of the proceeds from the sale of real estate owned by the guardian and the ward as tenants by the entireties.

We reverse finding the trial court's order erroneous. We conclude the money from the sale retained its tenancy by the entireties's characteristic in this case and, pursu-ant to the rule in *Whitlock v. Public Service Company of Indiana, Inc.* (1959), 239 Ind. 680, 159 N.E.2d 280, order the trial court to enter an order disbursing the proceeds to the wife in her individual capacity.

## FACTS

James and Mary Bramblett were married on March 16, 1979. On March 5, 1980 James conveyed his real estate to himself and Mary as tenants by the entireties. In early 1988 James's health began to fail due to a liver disease and he became unable to maintain and care for his personal and financial affairs. James entered a nursing home some time that spring, however, prior to entering the home James and Mary signed a listing agreement to sell their real estate. As a result of James's illness, Mary petitioned and was appointed guardian over the person and estate of James on May 25, 1988. July 22, 1988 Mary petitioned the court for permission to complete the sale of the real estate. In this petition, Mary indicated she had entered into a contract to sell the real estate for $100,000. The trial court granted this petition on July 26, 1988, Mary sold the property and the trial court approved the sale. On July 27, 1988 Mary filed a "Petition to Withhold and Disburse Funds" requesting that the proceeds from the sale be disbursed to her in her individual capacity as the spouse of the ward, subject to monthly disbursements to the guardianship account for the care and maintenance of James, her husband and ward. The trial court granted this petition and entered the following order:

## ORDER

Comes now Mary C. Bramblett, guardian of James R. Bramblett, ward, and having heretofore filed her petition for disbursement of funds, to-wit: (H.I.)
The Court now being duly advised finds that said petition should be granted.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that Mary C. Bramblett shall in her capacity as guardian of the estate and person of James R. Bramblett receipt for the proceeds of the sale and transfer all proceeds to herself personally.
IT IS FURTHER ORDERED that she shall, no less than monthly, transfer to the guardianship account the funds necessary for the care and maintenance of her husband and ward, and make due accounting thereof.

Dated this 27th day of July, 1988. (R. 35).

Approximately one month later on August 31, 1988 James died intestate, survived by Mary and three children from a previous marriage, the appellees herein (Children). On September 14, 1988 one of the children, Mark, petitioned and was appointed administrator of James's estate. On September 30, 1988 Mary filed her guardian's final report and a petition to terminate the guardianship. Mary concedes in her brief that no formal notice of the final accounting was given to either Mark, as administrator of the estate[1], or the other children and it is clear that the trial court approved the final accounting and terminated the guardianship that same day—*ex parte*. On October 12, 1988 the Children petitioned the trial court to reconsider its order approving the guardian's final report claiming the proceeds from the sale of the marital real estate should have been disbursed as follows: one-half to Mary in her personal capacity and one-half to the guardianship account.[2] After an evidentiary hearing on December 16, 1988, the trial court granted the Children's petition on December 30, 1988 and entered an order finding:

[t]hat the real estate which is the subject matter of the dispute herein should be allocated one half to the guardianship estate and one half to Mary C. Bramblett in her personal capacity. The Court specifically finds that the proceeds of such sale are not imprinted with the tenancy by the entirety which was affixed to the real estate itself prior to the sale. Notify parties.
(R. 51).

In summary, the trial court vacated its September 30, 1988 order which approved the guardian's final accounting and its July 27, 1988 order, which approved the disbursement of the proceeds to Mary, finding

the proceeds of the sale were not "imprinted with the tenancy by the entirety which was affixed to the real estate itself prior to the sale". (R. 51). The trial court ordered Mary as guardian to file an amended report allocating half of the proceeds of the sale to the guardianship and one-half the proceeds to her herself in her individual capacity. On January 9, 1989 Mary petitioned the trial court to certify its order for an interlocutory appeal. The trial court granted this petition on February 2, 1989 and this appeal ensued. Additional facts will appear in the text of the opinion where appropriate.

## DECISION

The issue before this court is whether a guardian must hold for a deceased ward's estate one-half of the proceeds from the sale of real estate held by the guardian and the ward as tenants by the entireties. Mary claims the proceeds from the sale of property held by the entireties are impressed with the same rights of survivorship as the original property. Therefore, she asserts the trial court's December 30, 1988 order—requiring her to allocate one-half of the proceeds to the guardianship account is erroneous. The Children claim that one-half of the proceeds from the sale are rightfully a part of James's estate and therefore the trial court's order is proper.

In this case, Mary, as guardian, petitioned the trial court for permission to complete a contract for the sale of the marital real estate she and James owned as tenants by the entireties. In this petition, she alleged that on February 23, 1988 she and James entered into a listing agreement to sell their marital residence and that in June of 1988 she entered into a contract to sell the property for $100,000. Mary also alleged that "it is in the best interests of the ward and this petitioner that said contract be completed and the property be sold, as funds are needed to maintain the cost of

1. I.C. § 29–1–18–46 provides in pertinent part that:
   (b) Notice of the hearing of every account in final settlement of a guardianship shall be given, unless waived, to the following:
   \*   \*   \*   \*   \*   \*
   2. The personal representative of the ward's estate, if any, in the event of the death of the ward; or
   West's 1979, Repealed by P.L. 169–1988, SEC. 8, *see now* I.C. § 29–3–1–1 *et seq.*, effective July 1, 1989.
2. We note Mary also raises an issue as to whether the trial court erred in entertaining the Children's petition to reconsider when the proper

procedure (to attack the trial court's order) was for Mark, as administrator of James's estate, to either appeal the order or file a suit against Mary, as guardian, within one year after the order was entered pursuant to IND.CODE §§ 29–1–18–46 and 29–1–18–49. The Children argue the trial court acted properly in granting an evidentiary hearing on their petition pursuant to IND.CODE § 29–1–1–21. However, because we find the trial court's order—requiring Mary to allocate one-half the proceeds to James's estate—erroneous and order the trial court to enter an order disbursing the proceeds to Mary in her individual capacity—we need not reach this issue.

nursing home care for the ward and maintenance of the petitioner''. (R. 22). The trial court granted this petition, Mary sold the property and the court approved the sale. On July 27, 1988 Mary filed a "Petition to Withhold and Disburse Funds" requesting that the proceeds from the sale be disbursed to her in her individual capacity as spouse of the ward, subject to monthly disbursements to the guardianship account for the care and maintenance of James, her husband and ward. The trial court granted this petition and ordered Mary, as guardian, to transfer all the proceeds to herself personally. The court further ordered that Mary transfer to the guardianship account—on a monthly basis—the funds necessary for the care of her husband and ward, James. Here, it appears the trial court entered its order pursuant to I.C. § 29–1–18–43 [3] which provides in part:

> 29–1–18–43. *Disposal of property; joint tenants by entirety; investments.*
>
> Sec. 43. (a) The real or personal property of the ward, or any part thereof, interest or expectancy therein, including any real property in which the ward has an interest as a joint tenant with right of survivorship or as a tenant by the entireties, may be sold, sold on conditional sales contract, mortgaged, leased, or exchanged, or any instrument, contract or commitment of any kind whatsoever affecting said property may be executed by the guardian of the estate upon such terms as the court may order for the purpose of paying the ward's debts, providing for his care, maintenance and education and the care, maintenance and education of his dependents, investing the proceeds, or in any other case where it is for the best interests of the ward.

Under this statute, any real property in which the ward has an interest as a tenant by the entireties, may be sold by the guardian of the estate upon such terms as the court may order for the purpose of providing for the care and maintenance of the ward. In her petition to complete the contract for the sale of the real estate, Mary alleged that it was in the best interest of the ward James that the contract be completed and the property sold as funds were needed to maintain the cost of nursing home care for James. The trial court allowed the contract to be completed and ordered Mary to disburse the proceeds to herself in her individual capacity as spouse

of the ward, subject to monthly disbursements to the guardianship account for the care and maintenance of James, her husband and ward. Further, at the evidentiary hearing on December 16, 1988 Mary testified and provided evidence that she kept the proceeds from the sale of the real estate intact for the care and maintenance of James and herself.

In *Whitlock, supra,* our supreme court noted that "Indiana law impresses the proceeds from property held by the entireties with the rights of survivorship, the same as the original property from which it came." *Id.* at 690, 159 N.E.2d at 285. The court also noted this rule is applicable only so long as the proceeds remain intact, stating:

> If the proceeds from the sale are considered to be held by the entireties, as stated in the cases cited above, the principle is applicable only so long as the proceeds are intact and have not been divided or disbursed. Once the proceeds have lost their identity as a separate res held by the entireties, certainly the principles of tenancy by entireties can no longer apply, any more than they can apply to the real estate which has been sold or transferred.

*Id.* at 691, 159 N.E.2d at 285.

In *Whitlock, supra,* a husband and wife received an appraiser's award as a result of eminent domain proceedings concerning realty they owned as tenants by the entireties. The supreme court found that although these proceeds were entireties property when awarded, the parties disposed of the proceeds in such a way that they could no longer be traced and identified. As there was "no evidence of any separate proceeds, funds or res remaining that may be identified as the proceeds from the real estate held by the entireties", the principles of tenancy by the entireties no longer applied. *Id.* at 691–92, 159 N.E.2d at 285.

However, in the case before us the proceeds from the sale are readily identifiable. Mary provided documentary evidence that the proceeds were kept intact and she gave a complete accounting to the court for the funds in the guardianship. Thus, under *Whitlock,* the proceeds from the sale of the property are impressed "with the rights of survivorship, the same as the original property from which it came." *Id.* at 690, 159 N.E.2d at 285.

Although the Children have cited no authority which holds that proceeds from the

---

**3.** West's 1979, Repealed by P.L. 169–1988, SEC. 8, *see now* I.C. § 29–3–1–1 *et seq.,* effective July 1, 1989.

sale of entireties property converts to tenancy in common property when one of the tenants is under a guardianship [4], they argue Mary must allocate one-half of the proceeds from the sale to James's estate pursuant to *Anuszkiewicz v. Anuszkiewicz* (1977), 172 Ind.App. 279, 360 N.E.2d 230, 233.

In *Anuszkiewicz*, a widow instituted an action against her son to recover proceeds from the sale of real estate formerly held by her with her husband in a tenancy by the entireties. The trial court entered judgment for the son and the wife appealed. On appeal, this court noted that once a husband and wife have joined as grantors in the sale of real estate, the proceeds may be expended or kept in accordance with their mutual wishes. Since the husband deposited one-half of the proceeds from the sale into a joint bank account with his son, this court held the husband's actions "changed the character of the proceeds from entirety property to personality held in joint tenancy" and therefore, the wife was not entitled to such proceeds after the husband's death. *Id.* at 283, 360 N.E.2d at 233. The court stated: "We therefore conclude that the proceeds from the sale of real estate held by the entireties only retain their character of survivorship when the marital partners so intend by appropriate action." *Id.*

The Children rely on the language quoted above and assert that once the real estate was sold, the proceeds were to be expended in accordance with James's and Mary's wishes. In the argument section of their brief, the Children assert "[t]here was ample evidence before the trial court that James intended to repay his mother from the proceeds of the real estate sale. Therefore, the court did not err when it ruled that one-half (½) of the proceeds remain in the guardianship estate".[5] (Children's brief, p. 7).

First, we note the Children's statement that "James intended to repay his mother from the proceeds of the real estate sale" is not supported by any citation to the record. According to our Rules of Procedure, Appellate Rule 8.3(A)(7), an appellant's argument with respect to any claimed error must be supported by citation to authority, statutes and parts of the record upon which he relies. Failure to supply this court with citation to authority and citation to the relevant portions of the record generally constitutes a waiver of the alleged error. *Howard v. State* (1985), Ind., 481 N.E.2d 1315; *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652. Second, we note that *Anuszkiewicz, supra* is distinguishable from the case before us. In *Anuszkiewicz*, the husband's actions changed the character of the proceeds from entirety property to personality held in joint tenancy with a party other than his wife. However, in the case before us, Mary did not take any action that was inconsistent with the idea that the proceeds were to retain the tenancy by the entireties characteristic. Mary alleged that the property needed to be sold as funds were needed to maintain the cost of nursing home care for James and for her own maintenance. After the sale, Mary kept the proceeds intact for the care and maintenance of James and herself. Again we note that at the evidentiary hearing on December 16, 1988 Mary provided documentary evidence that the proceeds from the sale were kept intact and she gave a complete accounting to the court for the funds in the guardianship. Under these circumstances we hold the proceeds from the sale of the real estate held by James and Mary as tenants by the entireties are impressed "with the rights of survivorship, the same as the original property from which it came". *Whitlock, supra.* Accordingly, the trial court's order of December 30, 1988 requiring Mary to allocate

4. Mary notes that the only statutory authority for the court to convert the tenancy by the entireties to a tenancy in common—when one of the spouse's is under a guardianship—is I.C. §§ 32–4–4–1 and 32–4–4–2. I.C. § 32–4–4–2 provides:

   *Findings and judgment of the court; action by guardian or spouse.*
   Sec. 2. Said joint tenancy or tenancy by entireties shall not be converted into an estate in common, except by a finding and judgment of the circuit or superior court that one of said parties has been adjudged a person of unsound mind and that said insanity is probably permanent, when said court shall enter a decree that said estate shall be and become an estate in common, which said action may be prosecuted by the guardian of said person of unsound mind or by the husband or wife, as the case may be, who is of sound mind.

   Since there was no finding by the trial court that James was insane or any court decree stating that the estate "shall be and become an estate in common", Mary argues these statutes are inapplicable. In their brief, the Children concede that these statutes are inapplicable to the case before us.

5. Apparently James borrowed money from his mother and father prior to his marriage to Mary. A search of the record reveals James's mother filed a claim against James's estate for $20,000. (R. 139).

one-half of the proceeds from the sale to the guardianship is erroneous and we remand this cause to the trial court with instructions to enter an order disbursing the proceeds to Mary in her individual capacity.

Reversed.

CHEZEM, P.J., and CONOVER, J., concur.

## ON PETITION FOR REHEARING

This cause comes before us on appellees, Ann Sebens, James and Mark Bramblett's (Children) Petition for Rehearing in *In re Guardianship of Bramblett* (1990), Ind. App., 549 N.E.2d 56. We address the Children's petition in order to clarify our opinion.

In the text of the opinion we stated that Ind.Appellate Rule 8.3(A)(7) foreclosed the Children's argument that, "their was ample evidence before the trial court that James intended to repay his mother from the proceeds of the real estate sale", because the Children failed to cite to the record where this evidence, if any, could be found. We stated the failure to supply this court with citation to the relevant portions of the record upon which the party relies generally constitutes a waiver of the alleged error, citing App.R. 8.3(A)(7). The Children correctly note that App.R. 8.3(A)(7) is directed to the appellant's brief, not the appellee's.[1] This court should have also cited App.R. 8.3(B) which provides that the appellee's brief shall conform to the requirements of App.R. 8.3(A)(1)–(8).[2]

As to the existence of "ample evidence" —that James intended to repay his mother from the proceeds of the real estate sale— we noted in footnote 5 of our opinion that our search of the record revealed that James's mother had filed a claim against James's estate for $20,000. Apparently, James borrowed money from his mother and father prior to his second marriage (9 years before his death). However, the existence of these facts is not "ample evidence" that James intended to repay his mother from the proceeds of the sale, and our search of the record did not reveal any such evidence. Again, we note the Children did not cite to the record, either in their brief or in their petition for rehearing, as to where this "ample evidence", if any, could be found. Accordingly, we deny the Children's petition.

---

1. App.R. 8.3(A)(7) provides in part:
   (A) *Brief of the Appellant.*
   * * *
   (7) ... The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review....

2. App.R. 8.3(B) provides:
   (B) *Brief of the Appellee. The brief of the appellee shall conform to the requirements of subdivision (a)(1)–(8)* except that a statement of the issues or of the case need not be made unless the appellee is dissatisfied with the statement of the appellant and no statement need be made regarding the jurisdiction of the court unless the appellee disputes jurisdiction. (emphasis supplied).